IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

\* \* \* \* \* \* \* \*

WILLIAM GOLLEHON,                              CV 95-37-H-CCL

        Petitioner,

    vs.

                               ORDER

MIKE MAHONEY, Warden,
Montana State Prison,

        Respondent.

\* \* \* \* \* \* \* \*

This matter is on remand with instructions from the Court of Appeals of the Ninth Circuit.  The parties have briefed Petitioner's remaining summary judgment claim ("Claim 7") and the Court has reviewed the legal arguments of the parties and determined that the issue can be decided on the briefs.  Neither party having requested oral argument, the Court is therefore prepared to rule.

This Court has jurisdiction in this case pursuant to 28 U.S.C. § 2254.  Petitioner Gollehon having filed his original

1

petition for writ of habeas corpus before the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the AEDPA does not apply to the merits of the Amended Petition. *Alcala v. Woodford*, 334 F.3d 862, 868 (9th Cir. 2003).

The facts pertinent to Petitioner's Motion for Summary Judgment are well known to the parties and were previously described by this Court in detail. *See Gollehon v. Mahoney*, No. CV 95-37-H-CCL, *slip op.* 2-12 (D. Mont. filed Jan. 18, 2005). The fact that is perhaps most relevant to the remaining claim is that Petitioner's offense was a communal crime, in that both Petitioner and his co-defendant Douglas Turner simultaneously committed the offense of deliberate homicide. The evidence presented at trial did not prove beyond reasonable doubt which of the two inmates, Gollehon or Turner, delivered the specific blow or blows that caused inmate Pileggi's death. Both Gollehon and Turner were seen striking Pileggi's head with baseball bats while Pileggi lay in the prison yard; both Gollehon and Turner delivered 4-6 blows each. Indeed, the truth is most likely that both Gollehon and Turner together delivered the specific blows that caused inmate Pileggi's death. This was a true communal

crime.

The only claim remaining is Claim 7, which is the "fair notice of death penalty claim" that the appellate panel held was properly exhausted in the state court. *Gollehon v. Mahoney*, 2007 WL 3194119, at *2-4 (9th Cir. 2007). However, the panel also noted that "[t]he conclusion [of the Montana Supreme Court] that 'deliberate homicide' and 'deliberate homicide by accountability' are the same crime is a state court determination of state law that this court cannot disturb on habeas review." *Gollehon*, 2007 WL 3194119, *3 (*citing Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)).

After reviewing the parties' arguments, the Court concludes that Petitioner's Fourteenth Amendment due process argument is based upon a fundamental flaw--Petitioner insists that he was not convicted of deliberate homicide. In that belief he is clearly mistaken. Petitioner was charged with two counts of deliberate homicide, each count pertaining to the same homicide victim but phrased in the alternative. The jury was properly instructed. Therefore, the jury understood that Petitioner could be found guilty of the deliberate homicide of Gerald Pileggi as charged by

3

Count I or that Petitioner could be found guilty of deliberate homicide of Gerald Pileggi as charged by Count II, but he could not be found guilty of both Counts I and II.  The significance of Count II was that it did not require the jury to determine which of the defendants, Gollehon or Turner, delivered the actual blow or blows that caused Pileggi's death.  *See Gollehon I*, 864 P.2d 249, 261-62 (Mont. 1993) ("charge of deliberate homicide by accountability allowed the jury to convict both men involved in the deliberate homicide without having to make the determination of who struck the fatal blow.").  Both the Petitioner and Turner were convicted of Count II.  Petitioner's understanding that he was acquitted of the crime of deliberate homicide is therefore plainly incorrect.  The jury convicted Petitioner of the deliberate homicide of Gerald Pileggi.  Petitioner's acquittal as to Count I is of no legal consequence or of any practical significance.

Montana statute provides for the death penalty as one of the available punishments for deliberate homicide.  Mont. Code Ann. § 45-5-102(2).  There is no confusion or ambiguity about the fact that the death penalty may be imposed for the crime of deliberate

4

homicide.

Moreover, prior to trial Petitioner was properly given actual notice by the State that it was seeking the death penalty in his case. *See Gollehon I*, 864 P.2d at 254.  Not only did Petitioner have the statutory notice, but also he had the actual notice that he was charged with a crime punishable by the death penalty and the State was actively seeking the death penalty in his case.

Montana case law has always treated the crime of "deliberate homicide by accountability" the same as the crime of "deliberate homicide." *See In the Matter of B.D.C.*, 687 P.2d 655 (Mont. 1984); *see also State v. Powers*, 645 P.2d 1357 (Mont. 1982).  In *B.D.C.*, a juvenile was charged with homicide by accountability on the allegation that he had proposed and planned the homicide along with another juvenile who actually pulled the trigger while B.D.C. served as the lookout.  In considering whether B.D.C. was charged with the homicide or with some other crime identified as "accountability," as was contended by B.D.C., the Montana Supreme Court stated that

B.D.C. seems to be arguing that when one is charged

5

> with an offense by accountability, he or she is being
> charged with a separate or different offense.
> Accountability, however, is merely a conduit by which
> one is held criminally accountable for the acts of
> another.  There is no separate offense, only the
> underlying offense which has been physically committed
> by another, but for which the defendant is equally
> responsible because of his or her conspiring or
> encouraging participation.

*B.D.C.*, 687 P.2d at 657.  In that case, B.D.C. did not actually

commit the shooting, but he was the original instigator of the

crime and the person who planned the crime and participated in

numerous aspects, such as providing the shooter with alcohol to

alleviate nervousness before the shooting, opening the victim's

house and leaving it unlocked for the shooter, and disposing of

the victim's body after the shooting.  *B.D.C.* stands for the

proposition that a homicide by accountability is still a homicide

and not some other lesser offense.

In *State v. Powers*, 645 P.2d 1357 (Mont. 1982), the Montana

Supreme Court ruled that deliberate homicide did not necessarily

require proof of intent to kill but could be based on proof of a

common design or course of conduct to accomplish an unlawful

purpose.  In *Powers* the common unlawful purpose attributed to the

four defendants was the purpose to commit assault or child abuse.

6

The State alleged that the four defendants physically assaulted a child over a 48 hour period with the justification that they were trying to improve the child's character and behavior through religious chastisement.  The child died with about 150 bruises on his body, 75% of which were inflicted in the previous 48 hours. One of the defendants, the child's mother, was convicted of deliberate homicide by accountability despite the fact that she had not physically abused or assaulted her son in the 48 hours preceding his death.  The jury convicted her under the accountability theory on evidence that she knowingly aided and abetted the other three defendants in the common design or course of conduct to accomplish the unlawful purpose (the child abuse or assault--which the defendants had apparently viewed as religious improvement of the child).

Although the State did not seek the death penalty against any of the four *Powers* defendants, *see id.* at 1360, all of the sentences were clearly sentences provided by the deliberate homicide penalty statute and not some other catch-all statute, *see below* fn.1 and accompanying text.  One of the four was sentenced to 60 years in the State Prison, another defendant was

sentenced to 10 years with four suspended, the child's father was sentenced to 20 years with 12 years suspended, and the child's mother was sentenced to twenty years, suspended. *Id.* The catch-all statute advocated by Petitioner, with its ceiling of 10 years, was obviously not the penalty statute applied in *Powers*.

Additionally, *Powers* is significant in that it refers to Illinois case law to assist in the interpretation of the Montana accountability statute:

> The State further contends that the Montana accountability statute was adopted from the Illinois accountability statute and interpretations thereunder indicate that where codefendants undertake a course of conduct or common design which results in a person's death, all can be held criminally responsible for the murder. *People v. Spagnola*, 260 N.E.2d 20 (Ill. 1970); *People v. Johnson*, 221 N.E.2d 662 (Ill. 1966); *People v. Richardson*, 207 N.E.2d 478 (Ill. 1965).

*Powers*, 645 P.2d at 1362. The Montana Supreme Court's reference to the case law of Illinois to assist in the interpretation of the Montana accountability statute is of significance because the Illinois case law had long made clear that homicide premised on a theory of accountability was a death penalty eligible crime. *See People v. Ruiz*, 447 N.E.2d 148 (Ill. 1982) ("accountability is not incompatible with the death penalty"). The fact that Montana

8

case law looked to Illinois case law, and Illinois case law had established that accountability theory homicides are death penalty eligible, makes it more predictable that Montana would follow suit and confirm that accountability theory homicides are death penalty eligible. In this case, the foreseeability of the Montana Supreme Court's ruling in *Gollehon I* (that deliberate homicide by accountability is a death penalty eligible offense) is the crucial aspect of the fair notice analysis. *See Bouie v. City of Columbia*, 378 U.S. 347 (1964) ("[D]eprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language."). It is not necessary that the precise ruling on the issue preexist the offense or the prosecution or the sentence. *See Rogers v. Tennessee*, 532 U.S. 451 (2001) (no violation of due process when state court abolishes common law "year and a day rule", applying new rule retroactively to affirm defendant's murder conviction, when victim died fifteen months after crime). "All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is

forbidden."  *Rose v. Locke*, 423 U.S. 48, 49 (1975) (upholding defendant's conviction for "crimes against nature" because defendant could not fairly claim that the criminal statute "afforded no notice that his conduct *might* be within its scope") (emphasis added).

There is nothing in either of these Montana cases, *B.D.C.* or *Powers*, that would lead to the expectation that the penalties for "deliberate homicide by accountability" are any different from the penalties for deliberate homicide.  In all of these accountability cases, the crime is deliberate homicide, and it should be noted that the deliberate homicide statute itself explicitly acknowledges circumstances wherein one person is held legally accountable for the acts of another:

Section 45-5-102.  Deliberate homicide.

(1)  A person commits the offense of deliberate homicide if:

(a)  he purposely or knowingly causes the death of another human being; or

(b)  he . . . commits, *or is legally accountable for the . . . commission* of . . . any other forcible felony and in the course of the forcible felony or flight thereafter, he *or any person legally accountable for the crime*

10

                    causes the death of another human being.

        (2)   A person convicted of the offense of deliberate
              homicide shall be punished by death as provided in
              46-18-301 through 46-18-310, by life imprisonment,
              or by imprisonment in the state prison for a term
              of not less than 10 years or more than 100 years,
              except as provided in 46-18-222.

In the face of this perfectly clear and unambiguous statute,

Petitioner argues that he was not convicted of deliberate

homicide but of accountability for deliberate homicide, a crime

for which Petitioner alleges that the Montana legislature

neglected to provide a penalty.  Petitioner then argues that in

such a circumstance the state court should have looked to Mont.

Code Ann. § 46-18-213,[1] which is the Montana penalty statute that

attaches to any crime for which no penalty is stated.  This

catch-all penalty provision sets a ceiling of ten years

imprisonment for crimes for which the Montana legislature has

failed to provide a penalty.  The flaw in this argument is that a

penalty is clearly and unambiguously provided for all deliberate

---

        [1]  "The court, in imposing sentence upon an offender
convicted of an offense which is designated as a felony and no
penalty is otherwise provided, may sentence the offender for any
term not to exceed 10 years in the state prison or may fine the
offender in an amount not to exceed $50,000 or may impose both
such fine and imprisonment."  Mont. Code Ann. § 46-18-213.

homicide crimes within the deliberate homicide statute.  *See*
Mont. Code Ann. § 45-5-102.

This Court cannot agree with Petitioner's argumentation.
The death penalty applicable to Count II of the Amended
Information, *see* Doc. 177-2 is set forth in perfectly precise
terms at § 45-5-102(2).  The Amended Information states quite
clearly that the State sought the death penalty for Count II:

<u>COUNT II</u>

On or about the second day of September, 1990, at
Montana State Prison, Powell County, State of Montana, the
above-named defendants, with the purpose to promote or
facilitate the commission of the offense of deliberate
homicide, aided, abetted or attempted to aid one another in
the commission of the offense of deliberate homicide of
Gerald Bruce Pileggi by striking him on the head with
baseball bats.
The maximum penalty provided by law for the offense of
Deliberate Homicide as alleged in Counts I or II is death as
provided in Sections 46-18-301 through 46-18-310, MCA, or by
life imprisonment or by imprisonment in the state prison for
a term of not less than 10 years or more than 100 years,
except as provided in 46-18-222, MCA.

Exhibit M to Pet'r Brief in Support of Summary Judgment Motion,

p. 48 (Doc. 177-2).

Montana's treatment of deliberate homicide by accountability
(as a subcategory of deliberate homicide, similar to "felony
murder") also is consistent with the case law of the State of

12

Illinois, from which Montana adopted its accountability statute. Thus, Petitioner had fair notice both from the Montana case law and from the Illinois case law that the crime with which he was charged was, in fact and in law, deliberate homicide, and that he would face any and all the statutory penalties applicable to that crime, including the death penalty.  Petitioner fails in his attempt to claim that application of the death penalty to the crime of deliberate homicide is somehow unexpected and indefensible under Montana law as it existed at the time of the offense.  In fact, the reverse is true: Petitioner could have had no reasonable expectation that the penalties for deliberate homicide by accountability differed in any way from the penalties applicable to any other deliberate homicide crime.

At the time of Petitioner's crime, even Montana death penalty sentencing statutes addressed the situation wherein a criminal defendant may receive the death penalty even if he did not actually commit the crime of deliberate homicide:

46-18-304.  Mitigating circumstances.  Mitigating circumstances are any of the following:

. . .

(7) The defendant was an accomplice in an offense committed

13

by another person, and his participation was relatively
minor.

MCA 46-18-304.  It is notable that Montana's death penalty
mitigation statute presumes that the death penalty may be
appropriate for a defendant who does not himself commit the
deliberate homicide but whose participation in the crime can be
described as being more than relatively minor.  Surely this
Montana statute put Petitioner on notice that even if he did not
commit the deliberate homicide himself he might still receive the
death penalty.  Surely the legal accountability language in the
deliberate homicide statute put Petitioner on notice that his
conduct might result in application of all legal penalties
available for the crime of deliberate homicide.

        The Montana Supreme Court's determination that "deliberate
homicide" and "deliberate homicide by accountability" are legally
the same is both reasonable and predictable under Montana law,
and it is this latter fact that determines the outcome of Claim
7.  Because Petitioner was convicted of the crime of deliberate
homicide and because Petitioner was given legal and actual notice
that the death penalty was being sought by the State of Montana,
Petitioner cannot succeed on a claim that he lacked fair notice
of the penalty under the due process clause of the Fourteenth

Amendment.

Petitioner's assertion that the state court failed to provide him with due process because it did not apply the rule of lenity is without merit.  Petitioner's rule of lenity argument is premised on the idea that Petitioner was not convicted of deliberate homicide and that no statutory penalty exists for accountability or the penalty for accountability is ambiguous. Petitioner seeks application of the "rule of lenity" to this allegedly ambiguous penalty to arrive at the conclusion that the death penalty cannot be applied at him.

However, there is no ambiguity, so the rule of lenity does not apply.  This was the ruling of the Montana Supreme Court, and I find it to be sound.  Certainly, Montana's construction of its criminal statutes was not so unforeseeable as to deprive Petitioner of the fair warning to which the Constitution entitles him.  Petitioner was convicted of deliberate homicide in a Montana state court by jury verdict.  Under Montana law, the penalties applicable to deliberate homicide include the death penalty.  Only a willingness to part company with common sense, supported by significant distortions of the charging document, the verdict form, the pertinent Montana statutes, and the relevant case law could result in a finding of ambiguity.  Seeing

15

none here, I believe the rule of lenity does not apply because there is no ambiguity as asserted by Petitioner in Claim 7 of his Motion for Summary Judgment.  Petitioner's best justification for his lenity argument is that it was advocated by a dissenting Montana Supreme Court justice, but a dissent is simply an insufficient ground upon which to find the ambiguity.

Accordingly,

IT IS HEREBY ORDERED that Petitioner's Motion for Summary Judgment (Claim 7) (Doc. 176) is DENIED.  All other claims having previously been disposed of, Petitioner's Amended Habeas Petition is DISMISSED, and all relief is DENIED to Petitioner.  Let judgment enter.

IT IS FURTHER ORDERED that, there being no substantial showing of a denial of a constitutional right, 28 U.S.C. § 2253(c)(2), issuance of a certificate of appealability is DENIED.

The Clerk is directed to notify the parties of entry of this order.

Done and dated this 10th day of July, 2009.


CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE

16